**SO ORDERED.**

**SIGNED this 10th day of February, 2017.**



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

```
In re:                      )
                            )
Q-Piedmont Restaurants, LLC )   Case No. 15-10256
                            )
                            )
          Debtor.           )
                            )
_____)
                            )
Everett B. Saslow, Jr.,     )
                            )
          Plaintiff,        )
                            )
v.                          )   Adversary No. 16-02008
                            )
Q-Piedmont Restaurants, LLC,)
Monty L. Wilson, and David  )
F. Meschan, PLLC            )
                            )
          Defendant.        )
_____)
```

### MEMORANDUM OPINION

This adversary proceeding came before the Court for trial on December 15, 2016. Everett B. Saslow, Jr. ("Plaintiff" or "Trustee") appeared as counsel on behalf of himself as trustee. Phillip E. Bolton appeared as counsel on behalf of Monty L. Wilson ("Wilson"). David F. Meschan ("Meschan") appeared as

1

counsel on behalf of his law firm, David F. Meschan, PLLC ("Meschan PLLC"). For the reasons stated herein, the Court will enter judgment in favor of Plaintiff, finding that the transferred funds are property of the estate of Q-Piedmont Restaurants, LLC ("Debtor"), and directing Meschan and Meschan PLLC to turn over the property pursuant to 11 U.S.C. § 542. This opinion shall constitute the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## I. PROCEDURAL HISTORY

Trustee commenced this adversary proceeding by filing a complaint [Doc. #1] (the "Complaint") against Debtor, Meschan PLLC, and Wilson on April 21, 2016. The Complaint alleges that the funds in the amount of $105,000 transferred to Debtor on August 4, 2015, while Debtor remained in chapter 11, and which funds remain in possession of Meschan and Meschan PLLC, as counsel for Debtor under the terms of prior orders of this Court, are owned by Debtor's bankruptcy estate. The Complaint seeks a declaration that the funds are owned by the estate and an order directing Meschan and Meschan PLLC to turn over the funds to Plaintiff as trustee for Debtor's converted chapter 7 case. Meschan, on behalf of Meschan PLLC, filed an Answer [Doc. #5], requesting that the Court find the funds are owned by Wilson. Wilson filed an Answer [Doc. #7] requesting the Court determine the funds were never transferred to the Debtor. At

2

trial, Wilson argued that the funds were held in trust by Meschan PLLC for his benefit on the condition that the Court confirmed a plan of reorganization which provided for the funds to be used as his contribution of new value for an interest in the reorganized debtor.  Wilson did not assert any counterclaims against the estate or assert any affirmative defenses.  <u>See</u> Wilson's Answer [Doc. #7].  Therefore, the Court only must determine who holds legal and beneficial title to the funds.

## II.  JURISDICTION AND AUTHORITY

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).  The parties have consented to this Court entering final judgment as to all matters raised in the pleadings, <u>see</u> Joint Scheduling Memorandum, p. 3 [Doc. #6], and this Court has constitutional authority to enter final judgments herein.

## III. FACTS

Debtor, Q-Piedmont Restaurants, LLC, is a limited liability company organized and existing under the laws of the State of North Carolina.  On March 10, 2015, Debtor filed a voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code, Case No. 15-10256 (the "Main Case").  Debtor's case was

3

converted to a case under chapter 7 on January 28, 2016. Prior to conversion, Debtor operated the business as a debtor-in-possession. Wilson was the manager and sole member of the Debtor. Meschan was counsel for Debtor.

Prior to the petition date, a number of creditors, including Branch Banking and Trust ("BB&T"), sued or threatened to sue Wilson for various liabilities related to Debtor's business. At least one of these obligations had been reduced to judgment entered against Wilson by Winston-Salem (Hanes), LLC (the "Landlord Judgment"). See Plaintiff's Exhibit 4 [Doc. #161, ¶ 3]. In an attempt to protect Wilson from further litigation and/or execution by the creditors, Debtor filed a motion, seeking an order staying the commencement or continuation of civil actions against Wilson so that he could focus on the reorganization efforts of the Debtor in the chapter 11 case. See Plaintiff's Exhibits 1 and 2 (motion, and memorandum in support, respectively). On July 7, 2015, this Court entered several consent orders temporarily staying the commencement or continuance of various civil actions against Wilson for a period of 45 days. See Plaintiff's Exhibits 3, 4, and 5. One of the consensual orders stayed the actions of BB&T. See Plaintiff's Exhibit 5 [Doc. #162] (the "BB&T Stay Order"). Pursuant to the BB&T Stay Order, Wilson executed a confession of judgment in favor of BB&T for over $420,000, which BB&T agreed

4

not to record until expiration of the consensual stay. The consensual 45 day "mini-stay" expired under the terms of the consent orders on August 7, 2015. See id.

On August 4, 2015, immediately prior to the expiration of the mini-stay, Wilson transferred $105,000 from the trust account of his personal attorney, Scott Y. Curry, to the trust account of David F. Meschan, PLLC, as attorney for Debtor. Prior to this transfer, Meschan sent a text message to Wilson which read:

> Also, just so U [sic] know, by next WEDNESDAY, August 5, the day before the 45 day mini-stay may expire for BB&T, I believe you should consider transferring your $115K to the Debtor (speaking as Debtor's counsel)—if U [sic] want to have your best chance of satisfying the "new value" exception to the Absolute Priority Rule, as I have explained it to you.  The best place for that, I believe, would be my firm's IOLTA trust account.  We would need a simple transfer document which I would be glad to prepare (as attorney for the grantee).  All for now.

Plaintiff's Exhibit 6.

On August 6, 2015, Meschan sent an email to Wilson which read:

> Monty: Please have your daughter lift the text below from my email – and make it the body of your email back to me.  SEND TODAY!!!! Preferably from your own email account. David.

Plaintiff's Exhibit 7.  That same day the following email was sent to Meschan from Wilson's personal email account:

> Meschan: This is to confirm that on August 4, 2015, I transferred and conveyed my ownership of, and all of my right, title and interest in, the sum of $105,000

to Q-Piedmont Restaurants, LLC, the debtor in Case No. 15-10256 C-11G (the "Debtor") pending in Bankruptcy Court for the Middle District of North Carolina (the "Court"). This I did by causing said amount to be transferred by my personal attorney Scott Y. Curry, Esq., who practices law in Lexington, North Carolina, from his IOLTA account (where he held said amount in trust for me personally) to the IOLTA account maintained by your law firm in Greensboro, North Carolina. It was then and remains my intent that your law firm, as attorney for the Debtor, hold these funds in trust for the sole benefit of the Debtor and as agent for the Debtor, and that I no longer have any personal interest whatsoever in said funds. Stated another way, Q-Piedmont Restaurants, LLC, i.e., the Debtor, now owns the funds (in their entirety) and I do not. I am currently the sole member of the Debtor and its sole manager. No one other than myself currently owns a membership interest (or any other type of equitable interest) in the Debtor. My purpose in conveying said funds to the Debtor was twofold: (1) to make such funds available to satisfy (as necessary, in whole or in part, as determined by the Court) the "New Value" exception to the Absolute Priority Rule in order to gain confirmation the Debtor's anticipated plan of reorganization in said Chapter 11 case (the "Plan"), and (2) to be used to pay such pre- and/or postpetiton [sic] obligations of the Debtor as may be approved by the Court incident to, or as a prerequisite of, confirmation of the Plan, or as a part of the Plan itself – as originally proposed by the Debtor or as it may be subsequently amended by the Debtor.

Plaintiff's Exhibit 8. The text of Wilson's email was taken directly from Meschan's email sent earlier that day. Meschan confirmed receipt of this email from Wilson. See Plaintiff's Exhibit 9. Although Wilson received Meschan's text message, he testified that he did not personally send this email. Instead Wilson instructed his daughter to copy the language from Meschan's email, paste it into an email, and send the email to

6

Meschan from Wilson's email account. Wilson testified that he neither wrote nor read this email prior to it being sent. But, Wilson received and understood the text from Meschan, and instructed his daughter to access his email account, follow the instructions from Meschan to copy the statement into an email back to Meschan, and sign his name to it.

After the transfer of the $105,000, Debtor, with the knowledge and consent of Wilson, expended a portion of those funds to pay for operations in the chapter 11 prior to conversion. After these expenditures, the remaining funds held by Meschan PLLC are $84,505.62.

## IV. ANALYSIS

Wilson argues that he is not bound by the terms of the email sent to Meschan because it was his daughter that sent the email, rather than him. Having authorized his daughter to send the email on his behalf from his personal email account, Wilson cannot now escape the effect of delivery of the funds and the expressed intent to transfer ownership. Wilson will be held accountable for the actions of his daughter acting for him and at his direction as his agent. Whether a principal-agent relationship exists is a factual determination. See Ashland Facility Operations, LLC v. N.L.R.B., 701 F.3d 983, 990 (4th Cir. 2012). "A principal may be liable for the actions of his agent if it is determined that the agent acted within either his

7

actual or apparent authority to take said actions." Convergent Acquisitions & Dev., Inc. v. Credent Real Estate, Inc., No. 3:06CV324, 2007 WL 2137829, at *3 (W.D.N.C. July 23, 2007) (citing McGarity v. Craighill, Rendleman, Ingle & Blythe, P.A., 83 N.C. App. 106, 109, 349 S.E.2d 311, 313 (1986)). "Actual agency exists 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" Ashland, 701 F.3d at 990 (quoting Restatement (Third) of Agency § 2.01 (2006)). Under North Carolina law, "[a]n agency relationship 'arises when parties manifest consent that one shall act on behalf of the other and subject to his control.'" Bauer v. Douglas Aquatics, Inc., 207 N.C. App. 65, 74, 698 S.E.2d 757, 764 (2010) (quoting Miller v. Piedmont Steam Co., 137 N.C. App. 520, 524, 528 S.E.2d 923, 926 (2000)).

In this case, Wilson instructed his daughter to send the email to Meschan on his behalf. Wilson consented to his daughter acting on his behalf in this capacity. Wilson's daughter followed his instructions and sent the email. When she did so, she was acting directly under his instructions as his agent in sending the email. Because a principal-agent relationship existed, Wilson not only is bound by the legal consequences that arise from that email and the plain language

transferring the ownership of the funds to the Debtor, but also is charged with the knowledge and understanding of the contents of the email sent by his agent on his behalf. See e.g., Norburn v. Mackie, 262 N.C. 16, 24, 136 S.E.2d 279, 285 (1964) ("[A] principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends, although the agent does not in fact inform his principal thereof.").

There is no dispute that Wilson transferred possession of the funds to Debtor. The plain language of the email sent by Wilson to Meschan reflected an intent to transfer not only possession, but also ownership of the funds to Debtor. Ownership of personal property is generally a mixed question of law and fact, but if the facts are not in dispute it is only a question of law. See Bullman v. Edney, 232 N.C. 465, 467, 61 S.E.2d 338, 339 (1950). It is a well-established principle that possession is prima facie evidence of ownership. See Willcox v. Stroup, 467 F.3d 409, 412 (4th Cir. 2006) (discussing the history of this legal maxim). This principle is the same under North Carolina law. See Pate v. Hazell, 107 N.C. 189, 11 S.E. 1089, 1089 (1890) ("There is no doubt that the possession of a chattel is prima facie evidence of ownership . . . ."). Possession of property is indicia of ownership and gives rise to

a rebuttable presumption that the possessor is the rightful owner. Willcox, 467 F.3d at 412. "The burden is on the party not in possession to prove title superior to that of the possessor." 63C Am. Jur. 2d Property § 40 (2012) (footnotes omitted). In this case, Wilson has not rebutted the presumption. In fact, the weight of the evidence corroborates the Debtor's ownership of the funds.

In the document sent to Debtor's counsel, Wilson unequivocally transfers title to the funds, stating that he no longer has any personal interest in the funds and that it is his intent that these funds be held solely for the benefit and ownership of the Debtor. This declaration of transfer further was confirmed by actual delivery of the funds to the Debtor's attorney to be held "in trust for the sole benefit of the debtor." Plaintiff's Ex. 8. (stating further, "I no longer have any personal interest whatsoever in said funds. Stated another way, Q-Piedmont Restaurants, LLC, i.e., the Debtor, now owns the funds (in their entirety) and I do not."). Debtor thereafter used a portion of the funds in its operations. Based on the statements sent by Wilson, Wilson unequivocally relinquished his ownership of the funds to Debtor.

North Carolina courts have recognized that transfer of funds is sufficient to transfer ownership, and that third-parties are entitled to rely upon the resulting possession. In

10

Tractor & Auto Supply Co. v. Fayetteville Tractor & Equipment Co., 2 N.C. App. 531, 163 S.E.2d 510 (1968), the same individual acted as president of two companies ("Fayetteville Tractor" and "Four County," respectively). The court assumed without deciding that the president engaged in check kiting whereby he wrote checks he knew to be worthless from Fayetteville Tractor's account at Southern National Bank to Four County. Id. at 539-41, 163 S.E.2d at 515-516. The president then deposited the worthless checks into the account of Four County at First Citizens bank. Id. Immediately thereafter, he wrote checks from Four County to Fayetteville Tractor totaling $50,963. Id. at 539, 163 S.E.2d at 515. Before First Citizens realized what had occurred, it had honored the checks to Fayetteville Tractor. Id. Thereafter, Fayetteville Tractor was placed in receivership. In attempting to recover the funds it had paid, First Citizens argued that title to the funds never had passed to Four County. Id. The court disagreed, stating:

> There can be no question that the possession of the money in this case . . . has passed. The possession of money by a person, nothing else appearing, certainly entitles a third person dealing with him, in the ordinary course of business to assume that he has title thereto.
> * * *
> We are of the opinion that the title to the money was transferred to Fayetteville Tractor at the time it cashed the checks drawn on the bank account of Four County . . . .

11

Id. at 542-43, 163 S.E.2d at 517.[1]   As in Fayetteville Tractor, Wilson transferred title to the funds upon delivering them to Debtor.   In this case, the transfer of title and ownership was made even more clear by the transmission of an unequivocal statement of transfer of title and ownership.   Having passed possession and title to the funds to Debtor, Wilson retained no interest by the express terms of his communications, as well as by operation of law.   See 63C Am. Jur. 2d Property § 36 (2012) (footnotes omitted) ("Outside of an agreement or law establishing a relationship to the contrary, the prior owners of a property are divested of all rights and obligations to the said property on the date that the title to the property is transferred to the new owners.").

## V.    CONCLUSION

For the reasons set forth herein, the Court determines that Debtor owns the funds held for its sole benefit in the trust account of Meschan PLLC.   Therefore, the Court will enter judgment in favor of the Plaintiff as follows:

---

[1] In Fayetteville Tractor, First Citizens was allowed an unsecured claim in the amount of the funds that it paid out in reliance on the worthless checks, and the Court assumed that, to the extent that any funds remained in the receivership estate, First Citizens would be entitled to a constructive trust due to the fraud by the president of the companies.  Id.   In this case, there is no allegation of fraud or other wrongful action which would give rise to a constructive trust.   See In re NC & VA Warranty Company, 556 B.R. 182, 194-95 (Bankr. M.D.N.C. 2016).   In any event, Wilson did not assert any counterclaim or affirmative defense against the Trustee or the bankruptcy estate, including any claim that would support the Court imposing the remedy of a constructive trust.   Therefore, the only issue for the Court is title and ownership to the funds.

(1)  Declaring that the funds held by David Meschan, PLLC, in Account Number XXXX-XX2793 in the amount of $84,505.62, as reflected on Meschan Exhibit 1, are property of Debtor's bankruptcy estate; and

(2)  Directing David Meschan, PLLC to turn over these funds to the Trustee pursuant to 11 U.S.C. § 542 within five (5) business days.

[End of Document]

## PARTIES TO BE SERVED

Everett B. Saslow, Jr.
Trustee
P.O. Box 989
Greensboro, NC 27402


Q-Piedmont Restaurants, LLC
700 Pembroke Road
Greensboro, NC 27408


Monty L. Wilson
302 Will Snider Rd.
Linwood, NC 27299


Phillip E. Bolton
622-C Guilford College Road
Greensboro, NC 27409


David F. Meschan, PLLC
125 S. Elm Street
Suite 500
Greensboro, NC 27401


David F. Meschan
David F. Meschan, PLLC
P.O. Box 29248
125 South Elm Street
Suite 500
Greensboro, NC 27429


William P. Miller
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

14